UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| LISA DAWN LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:15-CV-247-TAV-CCS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Summary Judgment [Doc. 15] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 16 & 17]. Lisa Dawn Lee ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On January 18, 2012, the Plaintiff filed an application for disability insurance benefits ("DIB"), claiming a period of disability which began December 31, 2011. [Tr. 117]. After her application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr. 76]. On October 30, 2013, a hearing was held before the ALJ to review determination of the Plaintiff's claim. [Tr. 31-39]. On January 1, 2014, the ALJ found that the Plaintiff was not disabled. [Tr. 7-20]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-4]; thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on June 10, 2015, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since December 31, 2011, the alleged onset date (20 CFR 404.1571 et seq.).
>
> 3. The claimant has the following severe impairments: degenerative disc disease, status post 2010 open reduction internal fixation of L1 bursa fracture surgery (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medially equals the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and carry, push and pull 20 pounds occasionally and 10 pounds frequently. With normal breaks in an 8-hour day, she can sit for 6 hours, and stand and/or walk for 6 hours; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; and can tolerate occasional exposure to vibrations and pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation.
>
> 6. The claimant is capable of performing past relevant work as a waitress and/or hostess. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

> 7. The claimant has not been under a disability in the Social Security Act, from December 31, 2011, through the date of this decision (20 CFR 404.1520(f)).

[Tr. 12-17].

## II. DISABILITY ELIGIBILITY

This case involves an application for DIB. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); see 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. Id. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.   STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th

4

Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

5

## IV. POSITIONS OF THE PARTIES

Construing the *pro se* two-page hand written letter liberally, the Plaintiff appears to generally argue that the ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence because she experiences disabling pain. [Doc. 15]. Specifically, the Plaintiff submits that she experiences severe pain in her back, hips, neck, and shoulders which interfere with her ability to work. [Id. at 1-2]. Moreover, the Plaintiff asserts that she is unable to afford medical treatment, and that her medication makes her tired. [Id.].

The Commissioner responds that substantial evidence supports the ALJ's decision and his RFC determination. [Doc. 17 at 3-8]. The Commissioner contends that the medical evidence of record, the Plaintiff's ability to work for some time after her back injury, the lack of treatment she received for neck and arm pain, and her reported daily living activities contradict her testimony and allegations of disabling pain. [Id.].

## V. ANALYSIS

In January 2010, the Plaintiff sustained a back injury after she was involved in a sledding accident. [Tr. 183]. The Plaintiff suffered a L1 burst fracture with canal comprises to her lumbar spine, T12 chance fracture with flexion distraction, and posterior ligamentous complex disruption at T12-L1. [Id.]. She underwent an open reduction internal fixation surgical procedure of the L2 and T12 and fusion from T11 and L3 with grafting. [Tr. 12, 184-85]. Following her back surgery, the Plaintiff continued to work for her husband's convenience stores until December 2011. [Tr. 30-31]. The Plaintiff testified that she quit in December 2011 because she could not stand, sit, or walk for prolonged periods of time and would sometimes need to lie down. [Tr. 35]. The Plaintiff explained that she could only stand and walk for 30

6

minutes and sit for one hour at one time. [Tr. 33]. She further complained of upper muscle separation in the lower neck that caused pain to radiate down into her arm. [Tr. 36]. She elaborated that lifting exacerbates her pain and that she can only lift up to five pounds. [Tr. 33, 36]. The Plaintiff also testified that once she starts moving around for the day, her pain increases and travels down her legs. [Tr. 41]. The Plaintiff stated she takes prescription ibuprofen, muscle relaxers, and sometimes Tylenol to treat her pain, which makes her drowsy, and that she has to lie down once or twice a day anywhere from 30 minutes to two hours in order to relieve pressure. [Tr. 35, 41-42]. She related that she never had pain until after her sledding accident, and that her level of pain has remained consistent since the accident. [Tr. 39].

In the disability determination, the ALJ concluded that the Plaintiff had severe impairments of degenerative disc disease and status post 2010 open reduction internal fixation of the L1 bursa fracture surgery. [Tr. 12]. The ALJ concluded, however, that the Plaintiff's hip, neck, and arm pain were non-severe impairments. [Id.]. The ALJ noted that while the Plaintiff's right hip was assessed with trochanteric bursitis, the condition improved with injections and over the counter medication. [Id.]. In addition, the ALJ observed that the Plaintiff received little treatment for neck and arm pain and that her ability to perform daily living activities detracted from the severity of the pain alleged. [Id.]. The ALJ then found that the Plaintiff had the following RFC: she could lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently; she could sit, stand, and/or walk for six hours in an eight-hour workday with normal breaks; she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she could tolerate occasional exposure to environmental elements; and she could never climb ladders, ropes, or scaffolds. [Tr. 13]. The ALJ based his determination upon the Plaintiff's testimony and the medical evidence of record. [Tr. 14-15].

The primary contention asserted by the Plaintiff is that she suffers from pain that is so severe she simply cannot maintain a job or perform work-related functions. In particular, the Plaintiff submits that she experiences pain caused by her back, neck, hip, and shoulders which interfere with her ability to sit, stand, bend over, squat, or lift. [Doc. 15 at 1]. The Plaintiff explains that her range of motion limits what she can do, that her back sometimes feels like its breaking when she does try to work, that she needs to lie down at times, and that her pain caused her to miss days at work when she was employed by her husband. [Id.].

The Court reviews the Plaintiff's allegations of pain as a challenge to the ALJ's credibility determination. See Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability."); Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997) ("In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant."). When assessing the credibility of a claimant's symptoms, such as pain, the ALJ must consider all of the available evidence within the record, including the claimant's "medical history, the medical signs and laboratory findings and statements about how your symptoms affect you." 20 C.F.R. § 404.1529(a). Although "subjective complaints of pain may support a claim of disability," Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 852 (6th Cir. 1986), "statement[s] as to pain or other symptoms shall not alone be conclusive evidence of disability," 42 U.S.C. § 423(d)(5)(A).

The Sixth Circuit Court of Appeals has succinctly stated the standard enumerated in 20 C.F.R. § 404.1529 for evaluating complaints of pain as follows:

> First, we examine whether there is objective medical evidence in an underlying medical condition. If there is, we then examine (1) whether objective medical evidence confirms the severity of the

8

> alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan, 801 F.2d at 853. With regard to this second prong – whether the objective evidence confirms the severity of the alleged pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain – section 404.1529(c)(4) of the regulation sets forth a host of factors the ALJ must consider in assessing the credibility of a claimant's statement regarding her pain. These factors include: (i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, received or have received for relief of pain or other symptoms; (vi) any measures that are used or were used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(4).

The Court notes that the ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters, 127 F.3d at 531. However, the ALJ's finding must be supported by substantial evidence. Id. Finally, "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." Id.

There appears to be no disagreement that the Plaintiff meets the first prong of the Duncan test. Indeed, objective medical evidence indicates that the Plaintiff has an underlying medical

9

condition – a back impairment sustained in a sledding accident, which the ALJ characterized as degenerative disc disease and status post 2010 open reduction internal fixation of the L1 bursa fracture surgery, both of which were found to be severe impairments. The issue, then, is whether the objective evidence confirms the severity of the Plaintiff's alleged disabling pain or, in the alternative, whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the pain alleged by the Plaintiff.

The Court finds that the evidence of record fails to substantiate the severity of pain alleged, and therefore, the ALJ's credibility finding is supported by substantial evidence. The ALJ considered the Plaintiff's testimony and alleged functional limitations, but observed that postoperative notes following the Plaintiff's back surgery, and other medical evidence, contradicted the Plaintiff's allegations. [Tr. 14]. For example, in February 2010, one month postoperative, the Plaintiff reported to her surgeon, P. Bradley Segebarth, M.D., that her pain was a four or five on a 10-point scale of severity and that she felt "85% better." [Tr. 14, 247]. In March 2010, the Plaintiff reported that her pain was down to a one out of 10, and the following month she stated that she felt 90% better. [Tr. 14, 245-46]. By the time the Plaintiff was discharged from Dr. Segebarth's postoperative care on July 28, 2010, follow-up visits were recommended only on a as per needed basis. [Tr. 244]. The Plaintiff reported no complaints of pain, that she was back to her normal activities, and Dr. Segebarth's examination findings included good range of motion with normal strength, reflexes, and sensation. [Tr. 14, 244]. Of particular significance, Dr. Segebarth assessed "no restrictions" and opined that the Plaintiff "is okay to go tubing or anything else she feels she is up to." [Tr. 14, 244]. These postoperative treatment notes, as well as the Plaintiff's own reports to her surgeon, undermine the Plaintiff's testimony that her back pain did not improve after her surgery.

The Court is cognizant that the Plaintiff concedes that she felt better after her surgery and thought she could go back to work. [Doc. 15 at 1]. The Plaintiff alleges, however, that once she returned to work, she eventually realized that her pain was too great to continue performing her duties as an officer worker, cashier, manager, and stocker. [Id.]. The Court agrees that the medical evidence of record demonstrates that the Plaintiff was not completely pain-free following her back surgery, but as articulated by the Commissioner [Doc. 17 at 7], the issue is not whether the Plaintiff experienced pain, but whether the Plaintiff's statements regarding the severity of her pain and its alleged limiting effects are credible to the extent that the Plaintiff cannot perform work at a level of substantially gainful activity. See Duncan, 801 F.2d at 853.

While the Plaintiff reported back pain at times following her release from Dr. Segebarth's care, the ALJ observed that an MRI of the Plaintiff's lumbar spine taken in October 2011 showed an improved appearance of the compression fracture at L1, no spinal or foraminal stenosis, and a broad based bulge at L3-4 with only a tiny protrusion towards the left with minimal narrowing of the left foramen. [Tr. 14, 242-43]. In addition, treatment notes from Internal West Medicine, where the Plaintiff received routine medical care, described intermittent back pain in 2012, with the Plaintiff reporting in June 2012 that she experienced persistent low back pain that radiated to her legs. [Tr. 14, 264]. However, the following month her pain had improved and was relieved by exercise and over the counter medicine, including ibuprofen. [Tr. 14, 261]. See Workman v. Comm'r of Soc. Sec., 105 F. App'x 794, 800 n.3 (6th Cir. 2004) ("The ALJ is permitted to consider the effectiveness of medication used to control pain and other symptoms associated with a claimant's impairments.") (citing 20 C.F.R. § 404.1529(c)(4)(iv)). The record does not contain further complaints of or treatment for her back until May 2013, when the Plaintiff presented to orthopedic physician Luke Madigan, M.D., in May 2013. [Tr.

11

444]. Dr. Madigan recommended physical therapy for strengthening, and by July 11, 2013, the Plaintiff reported she was doing better and examination findings included normal sensation and reflexes and the ability to complete heel raises, toe raises, and tandem walk without difficulty. [Tr. 14, 443-44]; see Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *7-8 (July 2, 1996) (stating that an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints").

The Court also finds that the ALJ properly concluded that the Plaintiff's hip, neck, and arm pain was not disabling. While the Plaintiff was diagnosed in October 2011 with trochanteric bursitis in her right hip, and also experienced pain in her left hip, the ALJ observed that treatment, which included steroid injections and over the counter medication improved her condition. [Tr. 13]. Indeed, while the Plaintiff reported at times that her hip pain continued to be persistent, once the Plaintiff was referred back to Dr. Madigan in May 2013 for further evaluation, the Plaintiff reported in July 2013 that her trochanter bursitis had improved following an injection received in May. [Tr. 443-45]. Moreover, as to the Plaintiff's neck and arm pain, the ALJ likewise properly concluded that the record contained little evidence of treatment for either condition. [Tr. 13]. The Plaintiff complained of neck pain in September 2010, at which time the pain was attributed to a muscle strain/spasm, and treatment included a muscle relaxant and application of heat. [Tr. 277-78]. The record contains one other single complaint of neck pain two years later in October 2012, with similar treatment recommendations. [Tr. 406-09]. Further, the record is void with regard to complaints of or treatment for arm pain. "In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain." Strong v. Soc. Sec. Admin., 88 F. App'x

841, 846 (6th Cir. 2004).

The foregoing treatment records undermine the location, duration, frequency, and intensity of pain alleged, demonstrate that medication and strength exercising was effective in treating the Plaintiff's pain, and therefore, the ALJ's conclusion that the Plaintiff's back, neck, hip, and arm pain was not disabling is supported by substantial evidence. See 20 C.F.R. § 404.1529(c)(4), -(ii) & - (iv-vi). The Court also observes the lack of any treating, examining, or other medical source opining that the Plaintiff was limited or restricted in any functional manner despite treatment for pain during the relevant time period at issue. See § 404.1529(c)(3) (information provided by "your treating or nontreating source, or other persons provide about your pain or other symptoms . . . is also an important indicator of the intensity and persistence of your symptoms"). As pointed out by the Commissioner [Doc. 17 at 5], the Plaintiff was able to continue working for almost two years following her back injury, which is the underlying medical condition and event that the Plaintiff alleges caused her to become disabled. While there is no doubt that a claimant's impairment may become more severe with the passage of time, the record simply does not substantiate the extent of pain and deterioration of functional activities alleged by the Plaintiff.

Moreover, the Court notes that the Plaintiff testified that she maintains the ability to drive, get her daughters ready for school and prepare their lunches, perform some household chores, including laundry, dishes, and cooking, is capable of personal care, goes grocery shopping, pays bills, and attends bible study once a week and church twice a week. [Tr. 33]. A claimant's ability to perform daily activates is one factor that may be appropriately considered in assessing a claimant's subjective complaints of pain. 20 C.F.R. § 404.1529(c)(4)(i). The ALJ properly recognized [Tr. 13-14] that the Plaintiff's reported activities weakened her assertions of

13

pain. See Meuzelaar v. Comm'r of Soc. Sec., No. 15-2341, 2016 WL 2849305, at *3 (6th Cir. 2016) ("Because much of Meuzelaar's 'own testimony suggest[ed] . . . [she] is capable of far more than she asserted,' the parts of her testimony to the contrary undermined her credibility.") (internal citation to the administrative record omitted).

The Plaintiff further argues that she "cannot afford to go to the doctor for pain medicine or for physical therapy." [Doc. 15 at 1]. While Social Security Ruling 96-7p instructs adjudicators to be mindful of a claimant's inability or difficulty in affording medical care before drawing any inferences about a claimant's symptoms and their functional effects, 1996 WL 374186, at *7-8, there is nothing in the record to suggest that the Plaintiff could not afford treatment. The Plaintiff received routine care from her primary care provider, Internal West Medicine, as well as an orthopedic physician when needed, throughout the relevant time period in question, and treatment notes from these providers indicate that the Plaintiff had no problem attending doctor's appointments, obtaining prescribed medication (such as muscle relaxers and other pain medicine) and in-office steroid injections, as well as following through with treatment recommendations which included physical therapy. [Tr. 266, 285, 408-09, 410, 412, 414, 445].

Finally, the Plaintiff contends that she experienced negative side effects with her medication which interfered with her ability to work. [Doc. 15 at 2]. Specifically, the Plaintiff submits that her muscle relaxers make her tired and sleepy. [Id.]. The Court observes, however, that the record is void of any complaints of or reported side effects caused by any of the medication that was prescribed to the Plaintiff, including her prescription for muscle relaxers, and that the Plaintiff routinely denied feeling fatigued. [Tr. 261-62, 269, 274, 413-14].

14

Based upon the foregoing, the Court finds that the ALJ properly considered the record before him in assessing the Plaintiff's allegations of pain. Therefore, the Court finds the Plaintiff's contentions are without merit.

VI.     **CONCLUSION**

Accordingly, it is hereby **RECOMMENDED**[1] that the Plaintiff's Motion for Summary Judgment [**Doc. 15**] be **DENIED**, and the Defendant's Motion for Summary Judgment [**Docs. 16**] be **GRANTED**.

Respectfully submitted,

  s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).